## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**THEODORE THOMAS SINDACO,**

**Plaintiff,**

-vs-                                                              Case No.  **6:14-cv-164-Orl-DAB**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

**Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for a period of disability, Social Security Disability Insurance and Supplemental Security Income benefits.  For the following reasons, the administrative decision is **AFFIRMED.**

## Procedural History

Plaintiff applied for benefits, alleging that he became unable to work on August 1, 2007 (R. 204-215).  The agency denied Plaintiff's applications initially and upon reconsideration, and he requested and received a hearing before an administrative law judge ("the ALJ").  The ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 10-31).  The Appeals Council declined to grant review (R. 1-6), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed his complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.  The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to back, neck, left ankle injuries, a chipped left hip, fractured right hand, intestinal problems and "memory and concentration problems" from post-traumatic stress disorder (R. 56, 73, 94).

*Summary of Evidence Before the ALJ*

Plaintiff was forty one years old on the alleged onset date, with a tenth grade education and past relevant work as a cabinet maker/installer (R. 24-25, 37, 66-67).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff, and opinions from examining and non-examining state agency consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairments of disorders of the spine, history of left ankle fracture, left hip degenerative disc disease, sleep apnea, hypertension, obesity, affective disorder, and anxiety related disorder (20 CPR 404.1520(c) and 416.920(c)) (R. 15); and the record supports this uncontested finding. The ALJ determined that through the date of the decision, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 16-17). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform:

> light to sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except with no more than frequent right upper extremity gross manipulation (handling), climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling; no more than occasional climbing of ladders, ropes and scaffolds. In addition, the claimant is limited to no more than simple routine repetitive tasks.

(R. 17).

The ALJ determined that Plaintiff could not return to his past relevant work (R. 24); however, with the assistance of the Vocational Expert, the ALJ found that other work existed in significant

numbers that Plaintiff could perform (R. 25-26), and therefore, the ALJ found Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff asserts three objections to the administrative decision, contending that: 1) the ALJ failed to fully develop the administrative record; 2) the ALJ failed to apply the correct legal standards when she did not state the weight she gave to a nurse practitioner's opinion; and 3) the ALJ failed to apply the correct legal standards to Plaintiff's abdominal impairments and limitations.

The Court reviews Plaintiff's objections in the context of the five step sequential evaluation that the ALJ must follow in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Duty to develop the record*

Plaintiff contends that the ALJ breached her duty to develop the record in that the ALJ subpoenaed record from James Byrne, D.O., a treating physician, and the records were illegible. Plaintiff contends that the ALJ had a duty to "re-contact" this physician and, because she did not do so, her findings with respect to this provider were not based on substantial evidence.

The ALJ has the basic obligation to develop a full and fair record, even when, as here, a claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). This includes the responsibility to develop a claimant's medical history for the 12 months preceding the month in which the application was filed.  *See* 20 C.F.R. §404.1512(d).  That said, the ALJ is not required to act as counsel to develop a claimant's case. *Foreman v. Astrue*, No. 8:09cv932-T-24AEP; 2010 WL 3292810, at *5 (M.D. Fla. Aug. 3, 2010) (*citing Smith v. Schweiker*, 677 F.2d 826, 829

(11th Cir.1982). It is Plaintiff's burden to prove that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

After the administrative hearing was held in this matter, the ALJ obtained additional records from Dr. Byrne, and sent the records to Plaintiff's counsel for his review (R. 201-202). The correspondence sent to counsel advised that Plaintiff had the right to take certain actions with respect to the additional evidence, noting:

> You may submit any or all of the following: written comments concerning the enclosed evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and *any additional records you wish me to consider (including a report from the treating physician). You may also submit written questions to be sent to the author(s) of the enclosed report(s).*
>
> You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law. If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision. In addition, *you may request an opportunity to question witnesses, including the author(s) of the enclosed report(s).* I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.
>
> You *may request that I issue a subpoena to require the attendance of witnesses or the submission of records. You must* submit a subpoena request, in writing, no later than 5 days before the date of any supplemental hearing. ...

(R. 201emphasis added).

Counsel responded to this invitation, noting:

> Thank you for your letter of April 22, 2013, with Dr. Byrnes notes. They are in cursive and barely legible. I do see something about osteoarthritis in the hip and a left radiculopathy. It appears to be a positive straight leg-raising test at 50% on the left and that is about all I can make out. It's also hand written radiculopathy, COPD, and depression.
> Thank you for the opportunity to comment . . .

(R. 309). Counsel did not provide a report from this physician, submit written questions to be sent to this physician, request a supplemental hearing, or seek the ALJ's assistance for an opportunity to

question this physician.  As Plaintiff had a full and fair opportunity to contact his own physician or seek the ALJ's assistance in obtaining clarification, the ALJ did not err in failing to more fully develop the record.[1] The record was as complete, with respect to Dr. Byrne, as counsel chose to make it.  *See* 20 C.F.R. § 404.1512(c).[2]  The Court now turns to whether the ALJ's analysis of Dr. Byrne's notes is in accord with proper legal standards and is supported by substantial evidence.

>  *Weighing the Opinions of Treating Physicians*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997*); Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an

---

[1] The Court notes the Commissioner's point that the regulations on recontacting physicians have been revised. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (if the evidence is insufficient to determine whether the claimant was disabled or not disabled, an adjudicator "may" recontact a treating physician).

[2] "Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."

inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See*

*Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was

unsure of the accuracy of his findings and statements.)

> In her decision, the ALJ noted, among other things:

> I have also considered the opinion evidence in making this determination. As for the opinion evidence, treatment notes from James Byrne, D.O. were practically illegible (Exhibit 13F). Claimant's counsel speculated that the treatment notes mentioned something about osteoarthritis in the hip and left radiculopathy ant [sic] that positive straight leg raise was elicited at 50 percent on the left (Exhibit 20E). Claimant's counsel failed to obtain any addition clarification from Dr. Byrne regarding any physical examination findings. However, I do note that a recent April 2013 exam at the Halifax clinic did not note any report of joint pint [sic], muscle aches, or stiffness by the claimant. In fact, exam revealed that all extremities were within normal limits. He was neurologically intact and there was no evidence of radiculopathy (Exhibit 12F). Based on these recent findings I find no support for claimant's counsel's assumptions.

(R. 23-24).

The Commissioner has acknowledged, and the Court finds, that, contrary to the ALJ's

rejection of "counsel's assumptions," Dr. Byrne's records do appear to show left radiculopathy,

positive straight leg raising at 50% on the left, and osteoarthritis of the left hip (R. 480-92).  To the

extent these findings are opinions, however, the ALJ identified good cause to discredit them.

As noted above, opinions of a treating physician may be discounted if they are unsupported

by objective medical evidence or inconsistent with other substantial evidence. Here, in addition to the

April 2013 examination showing no radiculopathy and normal extremities, the decision cites several

other records as being inconsistent with disabling orthopedic limitations.  The ALJ throughly

discussed the mild findings set forth in the Halifax treatment records, noting that Plaintiff had full

motor strength (R. 19, 345); straight leg raising produced no discomfort (R. 19, 342); motor and

sensory functions were within normal limits (R. 19, 322 and 335); and Plaintiff had full range of

motion, no abnormalities in his extremities, and his motor and sensory functions were grossly within

normal limits (R. 20, 377).  The ALJ observed that X-rays of Plaintiff's cervical and lumbar spine

showed only mild degenerative changes (R. 19, 324-25).    Moreover, the ALJ discussed the

consultative evaluation of Dr. Darwin Carabello at length (R. 20), detailing the minimal findings.

Additionally, the ALJ found that the opinions of the non-examining state agency physicians "also

supported a finding of 'not disabled.'" (R. 24).

> Based on a review of all the evidence, the ALJ summarized:
>
> In terms of the claimant's alleged musculoskeletal complaints, the record only shows mild findings. Ultimately, the objective studies would suggest that the claimant is not precluded from all work activity. Outside of his occasional work and activities, x-rays have only showed mild degenerative changes of the cervical and lumbar spine (Exhibit 1 F). Yet, he continued to engage in landscape work, concrete work, and any jobs his friend gets him (Exhibit 11F). Dr. Caraballo's CE findings were also minimal. Examination of the upper extremities revealed full range of motion of the upper extremities except for the right wrist. Fine manipulation was still intact in both hands. The claimant was able to turn the doorknob and button up a shirt without much difficulty. Examination of the lower extremities revealed full range of motion of the hips, knees, ankles and feet. Musculoskeletal strength in the lower extremities was normal. His gait was completely normal. X-rays of the lumbar spine showed evidence of good alignment and no evidence of fracture or dislocation. Primarily paraspinal muscle spasm of the lumbar spine area was present. Otherwise, the findings were unremarkable. X-rays of the left hip showed only mild degenerative joint disease (Exhibit 2F). Ultimately, the findings do not suggest that the claimant is precluded from work. Furthermore, treatment notes from recent visits to Halifax do not report any problems from a musculoskeletal standpoint. The claimant denied any joint pain, muscle aches or stiffness (Exhibit 12F).

(R. 22).

To the extent Dr. Byrne's findings serve to establish the existence of orthopedic conditions,

the ALJ acknowledged those conditions at Step Two and fully evaluated the severity of those

conditions in formulating the RFC.   Even if counsel's interpretation of Dr. Byrne's findings is fully

credited, the ALJ set forth a detailed analysis of the substantial contrary objective medical evidence

and concluded that Plaintiff's musculoskeletal complaints were not disabling.   As this conclusion is

supported by the substantial evidence cited by the ALJ, the decision to discount Dr. Byrne's opinion

is not reversible error.

*The GAF scores and opinions of a nurse practitioner*

Ms. Epstein, a nurse practitioner at Stewart-Marchman-Act Behavioral Health Care ("Stewart Marchman"), evaluated Plaintiff on a few occasions, and assessed Global Assessment of Functioning ("GAF") scores of 49 (R. 416), 46 (R. 420), and 48 (R. 422, 423). Other evaluators at Stewart Marchman noted much milder findings, and assessed GAF's of 55 (R. 436-443,456-466).[3] The ALJ discussed the Stewart Marchman treatment records at length in her opinion, noting:

> On February 22, 2013, the claimant was seen at Stewart Marchman ACT for medical psychotherapy and medication. The claimant reported that he was doing community service work for a local church. On examination, the claimant's mental status was rather unimpressive. The claimant was fully oriented, had normal speech, spontaneous thought processes, and normal thought content. There was no evidence of memory impairment. His concentration was mildly impaired. His judgment was fairly adequate. The claimant was able to relate well and there was no evidence of perceptual disturbances. The claimant was offered a diagnosis of recurrent major depressive disorder and assigned a GAF score of 55 (Exhibit 10F).
> ***
> A June 2012 mental status was not highly impressive. The claimant was clean and displayed fair hygiene and the claimant was fully oriented. The claimant's memory was intact and his thought content was relevant. The claimant's thought process was organized. There was no evidence of alcoholism or substance use, aggression, or suicidal ideation. The claimant's insight and judgment was fair. The claimant was assigned a GAF score of 47 (Exhibit 7F).
>
> On February 7, 2013, the claimant presented to Stewart Marchman for a follow-up and medication management. The claimant's mental status was hardly remarkable. The claimant was cooperative and demonstrated normal speech. The claimant was fully oriented. The claimant's thought processes was spontaneous and hit [sic] continuity of thought was relevant. The claimant demonstrated adequate abstract ability and there was no evidence of memory impairments. The claimant's insight and judgment were good. There was no evidence of perceptual disturbances. The claimant was assigned a GAF score of 55 and offered a diagnosis of major depressive disorder. The claimant reported that he also stays busy during the day to keep his mind off his problems. The claimant also told providers at Stewart Marchman that he has been trying to find work (Exhibit 10F).
>
> A later follow-up appointment at Stewart Marchman on February 22, 2013, was untelling of any significant limitations. The claimant was fully oriented, walked normally, had normal rate for thought process, and demonstrated adequate abstract ability. His attention and concentration were adequate. On a return follow-up in March 2013, the claimant's memory was noted to be mildly impaired. Otherwise, the claimant's mental status was well within normal limits (Exhibit 11F).

---

[3]Records from Halifax Health indicate grossly normal mental status examination findings (R. 413, 472), with Plaintiff oriented, with recent and remote memory intact (R. 345), and showing no anxiety or depression (R. 329, 354, 376).

(R. 21).

Following this review, the ALJ found that the conclusions from the providers at Stewart Marchman (including "the claimant's assigned GAF score") were entitled to little weight because they were inconsistent with Plaintiff's activities and the mental status findings in the record (R. 23). Plaintiff contends that the ALJ erred in failing to explicitly consider all of the findings of Ms. Epstein (including each individual GAF score), in mischaracterizing the record, and in failing to explicitly weigh each of her opinions supporting disability.

The regulations provide that evidence from "acceptable medical sources" is needed to establish the existence of an impairment. *See* 20 C.F.R. § 404.1513(a). Nurse practitioners and physician's assistants are not considered to be "acceptable medical sources" but are considered to be "other sources." 20 C.F.R. §§ 404.1513(a), (d)(1). Under the regulations, evidence from nurses, physician's assistants, and other non-acceptable medical sources cannot establish the existence of a medically determinable impairment, but an ALJ can use evidence from these other sources to show the severity of a claimant's impairments and how the claimant's impairments affects the claimant's ability to work. *See* 20 C.F.R. §§ 404.1513(a), (d)(1); *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *see also Lawton v. Commissioner of Social Sec.*, 431 Fed.Appx. 830, 833 (11th Cir. 2011) ("In order for a statement to be characterized as a "medical opinion," it must be from an acceptable source and address acceptable subject matter. 20 C.F.R. § 404.1527(a)(2).")

Although Plaintiff complains that the ALJ did not state what weight she gave several opinions from Ms. Epstein "or even mention them in his [her] decision," thus "mischaracterizing" the record, the ALJ was not required to refer to Ms. Epstein by name, nor was she required to discuss every notation contained in the Stewart Marchman treatment records. As another Court in this district has observed:

> Although the Eleventh Circuit has made clear that the ALJ has a duty to "state with
> particularity the weight given to different medical opinions and the reasons therefor,"

> *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011), Plaintiff has cited no case and the Court has found none, indicating that this duty pertains to opinions from a non-acceptable medical source, such as a chiropractor. "In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection," which does not enable the Court to conclude that the ALJ considered Plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Thus, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06–03p.

*Voronova v. Astrue*, 3:11–CV–709–J–32JBT, 2012 WL 2384414, at *2 (M.D. Fla. May 7, 2012), *adopted by* 3:11–CV–709–J–32JBT, 2012 WL 2384044 (M.D. Fla. June 25, 2012) (where the ALJ's opinion extensively discussed other evidence in record, failure to mention opinion of "other source" was not reversible error, as substantial evidence supported the ALJ's decision to essentially afford no weight to the opinion).

Here, as indicated in the excerpts above, the ALJ plainly considered and reviewed Plaintiff's entire medical condition, including the Stewart Marchman treatment notes, and gave a full rationale, supported by the substantial evidence cited, for her conclusions. With respect to the GAF scores, because the scores were adequately considered by the ALJ, there is no error in failing to explicitly "weigh" each score. *See Diamond v. Colvin*, No. 3:12–cv–983–J–34MCR, 2013 WL 6231261, at *11-12 (M.D. Fla. Dec. 2, 2013) (stating that "[a]bsent unusual circumstances, courts have generally declined to find reversible error where an ALJ failed to discuss a claimant's GAF scores or indicate the weight accorded to them" [collecting cases]).

### *Failure to evaluate Plaintiff's alleged abdominal impairment*

Plaintiff's last contention is that the ALJ failed to properly consider his allegations of disabling abdominal limitations by omitting this impairment as "severe" at step two of the assessment, and by failing to fully account for the limitations it presents in the subsequent steps of the evaluation.

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R.

§ 404.1521.[4] An impairment or combination of impairments is "not severe" when medical or other

evidence establish only a slight abnormality or a combination of slight abnormalities that would have

no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.

A remand is required where the record contains a diagnosis of a severe condition that the ALJ

failed to consider properly. *Vega v. Commissioner of Social Sec.,* 265 F.3d 1214, 1219 (11th Cir.

2001).  A mere diagnosis, however, is insufficient to establish that an impairment is severe.  *See*

*Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically

ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and

not simply in terms of deviation from purely medical standards of bodily perfection or normality."

*Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of

proof to provide substantial evidence establishing that a physical or mental impairment has more than

a minimal effect on a claimant's ability to perform basic work activities.  An impairment is not severe

only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to

interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  Thus, a "[c]laimant need show only that his

impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031

(11th Cir.1986).

Plaintiff asserts that the ALJ did not consider Plaintiff's allegations of abdominal impairments

of pain, and gastrointestinal issues.  This is incorrect. As the Commissioner notes, the ALJ discussed

evidence with respect to Plaintiff's alleged abdominal issues in her decision. The ALJ noted Plaintiff's

testimony of a remote history of reconstructive surgery to his abdomen after a stabbing, and a history

---

[4]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

of a gastrointestinal virus (R. 18). The ALJ noted that Plaintiff presented to Halifax Community

Health Systems on May 14, 2007, with right flank pain and received a diagnosis of right ureteral stone

(R. 19, 353-57). On September 10, 2007, Plaintiff presented to Halifax with complaints of severe

diarrhea and near syncope and an ultrasound revealed possible tiny stones in his right kidney (R. 19,

344-49). Plaintiff was diagnosed with viral gastroenteritis and treated with IV fluids and a GI cocktail

(R. 19, 346-347). Plaintiff testified that he recovered from the virus after approximately a week (R.

43-44).

The ALJ also noted the October 2011 consultative examination, which, with respect to the

claimant's abdomen, "revealed that bowel sounds were present. The abdomen was soft. There was

evidence of a large surgical scar in the midline consistent with history of stab wound. Tenderness to

palpation around the scar, but no evidence of wound dehiscence. There was no evidence of masses

or tumors." (R. 20, 363).   The ALJ discussed February 2012 treatment notes where Plaintiff

complained of lower quadrant pain (R. 20, 375), but, other than some tenderness, abdominal

examination was negative (R. 381).

In addition to detailing the medical records, the ALJ observed:

> I find no support to suggest that the claimant is disabled within the meaning of the
> Regulations. The claimant's alleged onset date was based on a stomach virus. There
> is no indication in the medical evidence that this condition persisted for twelve
> months. Treatment notes document that the claimant was treated for his stomach
> problems in May 2007. He was offered admission but declined. The claimant returned
> to Halifax in September 2007 for abdominal pain, and was noted to have a kidney
> stone. He did not have any subsequent problems thereafter. The claimant's subsequent
> visit to Halifax in January 20 1 0 was due to back pain after breaking up some
> concrete. He was noted to have a remote history of kidney stones and there was no
> abnormality noted of the claimant's abdomen (Exhibit 1F). As such, I do not find any
> other correlation to the claimant's alleged onset date.

(R. 22).

Thus, the ALJ considered the complaints of abdominal limitation, but concluded that there was

no support to suggest that this impairment limited Plaintiff's abilities for the required twelve

consecutive months.  This conclusion is amply supported.  Other than citing to the evidence establishing the diagnosis and treatment, Plaintiff points to no evidence showing that his stomach issues had any effect upon his ability to work.

Moreover, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Commissioner of Social Security*, 382 Fed. Appx. 823 (11th Cir. 2010).  Here, consistent with the regulations and applicable law, the ALJ credited Plaintiff with other severe impairments at Step 2 and proceeded forward with the sequential evaluation.  Thus, even if Plaintiff's abdominal issues should have been included as severe, the omission is only reversible error if the ALJ subsequently failed to fully account for functional limitations arising from these impairments.  As Plaintiff has not identified any functional limitations arising from his abdominal issues, and a mere diagnosis if not enough, no error is shown.  Absent any evidence of functional limitations arising from the condition, any error is harmless.  *See, e.g, Moore v. Barnhart*, 405 F.3d 1208, 1213, n. 6 (11th Cir. 2005) ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

## Conclusion

For the reasons set forth above, the administrative decision is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 2, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record